UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| MARK T. HOLCOMB, | ) Case No. 1:18CV0191 |
| | ) |
| Plaintiff, | ) |
| | ) JUDGE JAMES S. GWIN |
| v. | ) MAGISTRATE JUDGE DAVID A. RUIZ |
| | ) |
| COMMISSIONER OF SOCIAL | ) |
| SECURITY, | ) |
| | ) |
| Defendant. | ) REPORT AND RECOMMENDATION |

Plaintiff Mark Timothy Holcomb ("Holcomb" or "claimant") challenges the
final decision of Defendant Commissioner of Social Security ("Commissioner"),
denying his applications for a period of disability ("POD"), disability insurance
benefits ("DIB"), and Supplemental Security Income ("SSI") under Titles II and XVI
of the Social Security Act, 42 U.S.C. §§ 416(i), 423, 1381 *et seq*. ("Act"). This court
has jurisdiction pursuant to 42 U.S.C. § 405(g). This case is before the undersigned
United States Magistrate Judge pursuant to an automatic referral under Local Rule
72.2(b) for a Report and Recommendation.

The issue before the court is whether the final decision of the Commissioner
is supported by substantial evidence and, therefore, conclusive. For the reasons set
forth below, the Magistrate Judge recommends that the Commissioner's final
decision be affirmed.

## I.  PROCEDURAL HISTORY

On August 6, 2014, Holcomb filed applications for POD and DIB, and for SSI benefits, both applications alleging disability beginning March 8, 2013.  (R. 8, Transcript ("tr."), at 263-264, 270-272, 289-301.)  Holcomb's applications were denied initially and upon reconsideration.  (R. 8, tr., at 96-120, 121-145, 146-147, 148-161, 162-175, 176-177.)  Thereafter, Holcomb filed a request for a hearing before an administrative law judge ("ALJ").  (R. 8, tr., at 210-211.)

The ALJ held the hearing on August 22, 2016.  (R. 8, tr., at 37-77.)  Holcomb appeared at the hearing, was represented by counsel, and testified.  (*Id.* at 39, 42-70.)  A vocational expert ("VE") attended the hearing and provided testimony.  (*Id.* at 39, 70-76.)

On November 8, 2016, the ALJ issued the decision,[1] applying the standard five-step sequential analysis to determine whether Holcomb was disabled.  (R. 8, tr., at 14-31; *see generally* 20 C.F.R. §§ 404.1520(a) and 416.920(a).)  The ALJ concluded Holcomb was not disabled.  *Id.* at 30-31.

---

[1] The ALJ noted a previous decision on March 7, 2013, denying Holcomb's July 2011 Title II application for a period of disability and disability insurance benefits.  (R. 8, tr., at 14; *see generally* tr., at 78-88.)  Because the record contained new and material evidence establishing that claimant has additional severe impairments, the ALJ determined that she was not bound by the previous decision, and addressed the period beginning on March 8, 2013.  *See Drummond v. Commissioner*, 126 F.3d 837 (6th Cir. 1997), and *Dennard v. Secretary, HHS*, 907 F.2d 598 (6th Cir. 1990).

The Appeals Council denied Holcomb's request for review, thus rendering the ALJ's decision the final decision of the Commissioner. (R. 8, tr., at 1-4.) Holcomb now seeks judicial review of the Commissioner's final decision pursuant to 42 U.S.C. § 405(g). The parties have completed briefing in this case. Holcomb presents two issues concerning 1) the treating physician rule and 2) the ALJ's determination that Holcomb can perform jobs without accommodations. (R. 10, PageID #: 653.)

## II. PERSONAL BACKGROUND INFORMATION

Holcomb was born in 1967, and was 46 years old on the alleged disability onset date. (R. 8, tr., at 42, 263, 289.) Accordingly, he was considered a younger individual age 18-49 for Social Security purposes. *See* 20 C.F.R. §§ 404.1563, 416.963. He has at least a high school education, and is able to communicate in English. (R. 8, tr., at 29, 292, 294.) Holcomb had past work as a slitter operator, and slitter helper. (R. 8, tr., at 70-71.)

## III. RELEVANT MEDICAL EVIDENCE[2]

Disputed issues will be discussed as they arise in Holcomb's brief alleging error by the ALJ. Holcomb filed applications for POD and DIB, and an application for SSI benefits on August 6, 2014. (R. 8, tr., at 263-264, 270-272.) In his

---

[2] The summary of relevant medical evidence is not intended to be exhaustive. It includes only those portions of the record cited by the parties and also deemed relevant by the court to the assignments of error raised.

3

application, Holcomb listed his physical or mental conditions that limit his ability to work as:  "lower back pain, total knee replacement for both knees, compression fracture in the middle of back, pinched nerve in left hip, severe depression, anxiety, sleep apnea, morbid obesity, bad hearing in both ears, unable to see without my glasses, [and] unable to read without strong reading glasses."  *Id.* at 293.

Holcomb's physician, Erick Kauffman, M.D., prepared a note on June 28, 2011, which read, in its entirety:  "Mark Holcomb suffers from severe osteoarthritis of the knees and morbid obesity.  He is unable to work due to these medical conditions."  (R. 8, tr., at 331.)

On June 24, 2014, Holcomb presented to Emad W. Daoud, M.D., Ph.D., complaining of low back pain.  (R. 8, tr., at 427.)  He reported he had received bilateral knee injections from Dr. Kauffman in April 2014, which relieved his pain for a month.  *Id.* at 428.  X-rays revealed minimal disc space narrowing, no fracture or misalignment, and only mild degenerative changes.  *Id.*  Holcomb reported joint swelling in his knees and ankles, and pain in his knees, hands, and ankles.  *Id.*  He reported longstanding low back pain, radiating to the left buttock, and bilateral knee pain.  *Id.* at 429-430.   Range of motion of the lumbar spine was limited in both flexion and extension, and he had tenderness at the left sacroiliac joint.  *Id.* at 430. Straight leg raising was questionable on the left, and both knees had some decreased ROM.  *Id.*  Dr. Daoud discussed with Holcomb the effect of his weight on his back and knees.  *Id.* Dr. Daoud's impression was "degenerative disc disease of

4

the lumbar spine, lumbar radiculopathy, sacroiliitis, [and] morbid obesity." *Id.*  He recommended injections for immediate pain relief, continuation of Motrin and a prescription for gabapentin, with physical therapy once the pain was controlled.  *Id.*

Holcomb presented to Richard Hill, M.D., on July 30, 2014, for a psychiatric assessment, on referral from his physician Dr. Kauffman.  (R. 8, tr., at 468-470.) Holcomb reported that he had been tired and in pain for the past year or two, that he cannot work and last worked in 2010.  *Id.* at 468.  He stated that he could not go up and down steps, or stand, "so they let me go."  *Id.*  Holcomb reported that his current weight was approximately 375 pounds, and that he wanted to reduce that to below 300, so that he could get knee replacements.  *Id.*

Holcomb reported anxiety leading to panic or irritability, and a depressed mood.  (R. 8, tr., at 468.)  He had thoughts of self-harm, without any intention of following through.  *Id.* He was anxious about physical health, finances, and obesity, and it was noted anxiety sometimes lead to panic attacks.  *Id.*  Holcomb reported that he gets paranoid at time, "but [was] vague about this."  *Id.*  Dr. Hill indicated a moderate degree of difficulty with activities of daily living, such as shopping, cleaning, finances, travel, and cooking.  *Id.* at 469.

Dr. Hill's assessment at this intake interview was major depressive disorder, (to rule out psychotic features), panic disorder with agoraphobia, and to rule out social phobia.  (R. 8, tr., at 469.)  The doctor also assessed chronic pain syndrome of the knees and back, morbid obesity, a history of substance abuse (denied current), and sleep apnea.  *Id.*  Dr. Hill adjusted the patient's medications, with a goal of

5

increased sleep leading to improved mood and decreased anxiety.  *Id.* at 470.  He added that "weight loss will be very important for both his physical and psychological state," and recommended that Holcomb pursue psychotherapy.  *Id.*

On July 30, 2016, Dr. Hill completed an Assessment of Ability to Sustain Work-Related Activities (Mental) concerning Holcomb.  (R. 8, tr., at 596-599.)  Dr. Hill indicated that Holcomb had a full ability to understand, remember, and carry out short and simple instructions.  *Id.* at 596.  His ability to sustain an ordinary routine without special supervision was marked at between 40 and 50 percent of an 8-hour workday; his ability to work in coordination with, or in proximity, to others without being unduly distracted was marked between 60 and 70 percent of a workday; and his ability to complete a normal workday and workweek without interruptions from psychologically-based symptoms was assessed as between 30 and 40 percent.  *Id.*  The doctor marked Holcomb's ability to perform at a consistent pace without an unreasonable amount of rest periods, and maintain attention and concentration for extended periods, at between 20 and 30 percent of a workday.  *Id.* at 597.  Dr. Hill attributed these limitations to "treatment-resistant depressive symptoms and panic disorder," which greatly impair his daily functioning.  *Id.*

Dr. Hill assessed the claimant's ability to interact appropriately with the general public, accept instructions and respond appropriately to criticism from supervisors, at between 20 and 30 percent of a workday.  (R. 8, tr., at 597.)  His ability to get along with coworkers and maintain socially appropriate behavior, was marked at between 50 and 60 percent of a workday.  *Id.*  Holcomb's ability to

6

respond appropriately to changes in the work setting was indicated as between 70 and 80 percent of a workday, and his ability to deal with ordinary work stress was marked at between 20 and 30 percent. *Id.* at 597-598. Dr. Hill attributed these limitations to "slowed thinking, trouble with decisions, low self-esteem, easily overwhelmed – then freezes, and often develops panic attack." *Id.* Dr. Hill estimated that Holcomb would be likely to be absent from work as a result of his impairments more than four times per month, on average. *Id.* at 598.

Dr. Hill indicated that he first saw Holcomb on July 30, 2014, but that his symptoms likely existed prior to that date. (R. 8, tr., at 598.) The doctor noted that medications reduce the frequency of panic attacks, "but seemingly any stressor/life change event causes them to return." *Id.* Dr. Hill diagnosed Holcomb with major depressive disorder, severe, recurrent; panic disorder with agoraphobia; and morbid obesity. *Id.* at 599.

State agency reviewing psychologist, Janet Souder, Psy.D., found on November 28, 2014, that Holcomb had a moderate restriction of activities of daily living, and moderate difficulties in maintaining social functioning and in maintaining concentration, persistence or pace. (R. 9, tr., at 112-113 (psychiatric review).) Dr. Souder completed a mental residual functional capacity assessment, in which she found that Holcomb was moderately limited in his ability to maintain attention and concentration for extended periods, to perform activities within a schedule, maintain regular attendance, and be punctual. *Id.* at 116-117. Dr. Souder assessed that claimant's ability to complete a normal workday and

7

workweek without interruptions from psychologically based symptoms, and to perform at a consistent pace without an unreasonable number of rest periods, was moderately limited. *Id.* at 117. Dr. Souder noted his limitations for sustained concentration and pace were due to significant depression and lack of energy or interest. *Id.* She explained that Holcomb is able to complete routine simple tasks in a setting without fast pace or strict production demands, where he can have occasional schedule flexibility to manage his symptoms. *Id.*

Dr. Souder assessed that claimant's ability to interact with the general public, and to get along with coworkers without distracting them, or exhibiting behavior extremes, was moderately limited. (R. 9, tr., at 117.) The doctor noted that Holcomb was able to work in a setting where he interacts superficially with others. *Id.* Dr. Souder determined there was no history of decompensation in reaction to workplace stress, and that claimant "remains able to manage routine workplace pressures and stressors." *Id.* at 118.

On reconsideration, state agency reviewing psychologist, Jaime Lai, Psy.D, adopted Dr. Souder's psychiatric review technique findings (moderate restriction of activities of daily living; and moderate difficulties in maintaining social functioning, or maintaining concentration, persistence or pace) on May 29, 2015. (R. 8, tr., at 153-154.) Dr. Lai's mental RFC assessment was also identical with Dr. Souder's assessment. *Id.* at 157-159. Dr. Lai also noted that her RFC assessment was not an adoption of the ALJ decision dated March 7, 2013, "as new and material evidence indicates the presence of a severe MDI." *Id.* at 159.

8

State agency reviewing physician Leanne M. Bertani, M.D., prepared a physical RFC assessment on February 24, 2015.  (R. 8, tr., at 114-116.)  Dr. Bertani determined Holcomb was capable of light work, with the ability to stand or walk about four hours, and the ability to sit for six hours, of an eight-hour workday.  *Id.* at 114.  The claimant's ability to push or pull is limited to occasional in both legs, due to osteoarthritis in his knees and his BMI over 50.  *Id.*  Dr. Bertania opined that Holcomb can never climb ladders, ropes, or scaffolds; can occasionally climb ramps or stairs, balance, stoop, kneel or crouch; and can never crawl.  *Id.* at 115.  These postural limitations are also due to osteoarthritis in claimant's knees, and his BMI over 50, plus low back pain with some radicular symptoms.  *Id.*

Dr. Bertani opined that Holcomb would need to avoid concentrated exposure to background noise, in environments where verbal communication is required, due to his allegations of minor hearing loss.  (R. 8, tr., at 115-116.)  The claimant is to avoid even moderate exposure to hazards, specifically no unprotected heights due to his high BMI, and "loss of protective reflexes secondary to pain."  *Id.* at 116.  On reconsideration on May 26, 2015, state agency reviewing physician Michael Delphia, M.D., concurred with Dr. Bertani's physical RFC, with the sole exception of adding that claimant should avoid concentrated exposure to fumes, odors, dusts, gases, and poor ventilation.  *Id.* at 155-157.  Dr. Delphia also indicated that the RFC assessment was not an adoption of the ALJ decision dated March 7, 2013, "as new and material evidence presented indicates additional and more severe impairments."  *Id.* at 157.

9

## IV.  ALJ's DECISION

The ALJ made the following findings of fact and conclusions of law in her

November 8, 2016, decision:

1.  The claimant meets the insured status requirements of the Social Security Act through June 30, 2014.

2.  The claimant has not engaged in substantial gainful activity since March 8, 2013, the alleged onset date (20 C.F.R. 404.1571 *et seq.* and 416.971 *et seq.*).

3.  The claimant has the following severe impairments:  osteoarthritis of the bilateral knees, degenerative disc disease of the lumbar spine, sleep apnea, obesity, anxiety, and depression (20 C.F.R. 404.1520(c) and 416.920(c)).

4.  The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 C.F.R. 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925, and 416.926).

5.  After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work as defined in  20 CFR 404.1567(b) and 416.967(b) except the claimant can stand or walk a maximum of four hours and is limited to using foot controls and pushing and pulling with bilateral lower extremities occasionally.  The claimant can never climb ladders, ropes or scaffolds and never crawl.  The claimant can perform all other postural functioning occasionally.  The claimant must avoid operating hazardous machinery, such as power saws and jack-hammers, or working at unprotected heights.  The claimant has no memory limitations, but is limited to routine type work without fast production pace and is limited to superficial interaction with others, defined as no mentoring, conflict resolution, or persuading.

6.  The claimant is unable to perform any past relevant work (20 CFR 404.1565 and 416.965).

10

7.  The claimant was born on [***] 1967, and was 46 years old, which is defined a younger individual age 18-49, on the alleged disability onset date (20 CFR 404.1563 and 416.963).

8.  The claimant has at least a high school education and is able to communicate in English (20 CFR 404.1564 and 416.964).

9.  Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

10.  Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 416.969, and 416.969(a)).

11.  The claimant has not been under a disability, as defined in the Social Security Act, from March 8, 2013, through the date of this decision (20 C.F.R. 404.1520(g) and 416.920(g)).

(R. 8, tr., at 17, 20, 28, 29, 30.)

## V.  DISABILITY STANDARD

A claimant is entitled to receive POD, DIB or SSI benefits only when he establishes disability within the meaning of the Social Security Act.  *See* 42 U.S.C. §§ 423, 1381.  A claimant is considered disabled when he cannot perform "substantial gainful employment by reason of any medically determinable physical or mental impairment that can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than twelve (12) months." 20 C.F.R. §§ 404.1505(a), 416.905(a).

Social Security Administration regulations require an ALJ to follow a five-step sequential analysis in making a disability determination.  *See* 20 C.F.R. §§

11

404.1520(a), 416.920(a); *Heston v. Commissioner of Social Security*, 245 F.3d 528, 534 (6th Cir. 2001).  The Sixth Circuit has outlined the five steps as follows:

> First, the claimant must demonstrate that he has not engaged in substantial gainful activity during the period of disability.  20 C.F.R. § 404.1520(a)(4)(i). Second, the claimant must show that he suffers from a severe medically determinable physical or mental impairment.  *Id.* § 404.1520(a)(4)(ii).  Third, if the claimant shows that his impairment meets or medically equals one of the impairments listed in 20 C.F.R. Pt. 404, Subpt. P, App. 1, he is deemed disabled.  *Id.* § 404.1520(a)(4)(iii).  Fourth, the ALJ determines whether, based on the claimant's residual functional capacity, the claimant can perform his past relevant work, in which case the claimant is not disabled.  *Id.* § 404.1520(a)(4)(iv).  Fifth, the ALJ determines whether, based on the claimant's residual functional capacity, as well as his age, education, and work experience, the claimant can make an adjustment to other work, in which case the claimant is not disabled.  *Id.* § 404.1520(a)(4)(v).
>
> The claimant bears the burden of proof during the first four steps, but the burden shifts to the Commissioner at step five.  *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 529 (6th Cir. 1997).

*Wilson v. Commissioner of Social Security*, 378 F.3d 541, 548 (6th Cir. 2004);; *see also* 20 C.F.R. § 416.920(a)(4).

## VI.  STANDARD OF REVIEW

Judicial review of the Commissioner's benefits decision is limited to a determination of whether the ALJ applied the correct legal standards, and whether the findings of the ALJ are supported by substantial evidence.  *Blakley v. Commissioner of Social Security*, 581 F.3d 399, 405 (6th Cir. 2009); *Richardson v. Perales*, 402 U.S. 389, 401 (1971).  "Substantial evidence" has been defined as more than a scintilla of evidence, but less than a preponderance of the evidence.  *Wright v. Massanari*, 321 F.3d 611, 614 (6th Cir. 2003); *Kirk v. Sec'y of Health & Human*

12

*Servs.*, 667 F.2d 524, 535 (6th Cir. 1981).  Thus, if the record evidence is of such a nature that a reasonable mind might accept it as adequate support for the Commissioner's final benefits determination, then that determination must be affirmed.  *Wright*, 321 F.3d at  614; *Kirk*, 667 F.2d at 535.

The Commissioner's determination must stand if supported by substantial evidence, regardless of whether this court would resolve the issues of fact in dispute differently, or substantial evidence also supports the opposite conclusion.  *Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007); *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986).  This court may not try the case *de novo*, resolve conflicts in the evidence, or decide questions of credibility.  *Wright*, 321 F.3d at  614; *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984).  The court, however, may examine all the evidence in the record, regardless of whether such evidence was cited in the Commissioner's final decision.  *See Walker v. Sec'y of Health & Human Servs.*, 884 F.2d 241, 245 (6th Cir. 1989); *Hubbard v. Commissioner*, No. 11-11140, 2012 WL 883612, at *5 (E.D. Mich Feb. 27, 2012) (quoting *Heston*, 245 F.3d at 535).

## VII.  ANALYSIS

### A.  Treating Physician Opinion

Holcomb argues that the ALJ erred when evaluating the opinion from Dr. Hill, under 20 C.F.R. § 404.1527 and  SSR 96-2p, and he contends the ALJ did not provide good reasons for discounting the opinion.  (R. 10, PageID #: 653, 662-670.)

It is well-recognized that an ALJ must generally give greater deference to the opinions of a claimant's treating physicians than to non-treating physicians.[3] *Gayheart v. Commissioner*, 710 F.3d 365, 375 (6th Cir. 2013); *Blakley*, 581 F.3d at 406; *Wilson*, 378 F.3d at 544.  This doctrine, often referred to as the "treating physician rule," is a reflection of the Social Security Administration's awareness that physicians who have a long-standing treatment relationship with an individual are often well-equipped to provide a complete picture of the individual's health and treatment history.  *Id*.; 20 C.F.R. § 416.927(c)(2).  The treating physician doctrine requires opinions from treating physicians to be given controlling weight when the opinion is (1) "well-supported by medically acceptable clinical and laboratory diagnostic techniques" and (2) "not inconsistent with the other substantial evidence in the case record."  *Gayheart*, 710 F.3d at 376 (citing  20 C.F.R. § 404.1527(c)(2)); *Blakley*, 581 F.3d at 406; *Wilson*, 378 F.3d at 544.  In other words, treating physicians' opinions are only given deference when supported by objective medical evidence.  *Vance v Commissioner*, No. 07-5793, 2008 WL 162942, at *3 (6th Cir. Jan. 15, 2008) (citing *Jones v. Commissioner*, 336 F.3d 469, 477 (6th Cir. 2003)).

---

[3] Revisions to regulations regarding the evaluation of medical evidence went into effect on March 27, 2017, and purport to apply to the evaluation of opinion evidence for claims filed before March 27, 2017.  82 *Fed. Reg.* 5844-5884 (Jan. 18, 2017).  Plaintiff's claim was filed before March 27, 2017, and the ALJ's decision was rendered before the new regulations took effect.  For the sake of consistency, the court continues to cite the language from the former regulations that were in effect at the time of the ALJ's decision.

14

Social Security regulations require the ALJ to give good reasons for discounting evidence of disability submitted by the treating physician(s). *Blakley, 581 F.3d at 406*; *Vance, 2008 WL 162942, at *3*. Those good reasons must be supported by evidence in the case record, and must be sufficiently specific to make clear to subsequent reviewers the weight assigned to the treating physician's opinion and the reasons for that weight. *Gayheart, 710 F.3d at 376*; *Blakley, 581 F.3d at 406-407*; *Winning v. Commissioner, 661 F.Supp.2d 807, 818-819 (N.D. Ohio 2009)* (quoting SSR 96-2p). The obligation to provide good reasons permits meaningful and efficient review of the ALJ's application of the treating physician rule. *Cole v. Astrue, 661 F.3d 931, 938 (6th Cir. 2011)*.

Unless a treating source's opinion is given controlling weight, the ALJ is required to consider the following factors in deciding the weight to give any medical opinion: the length of the treatment relationship, the frequency of examination, the nature and extent of the treatment relationship, the supportability of the opinion, the consistency of the opinion with the record as a whole, and the specialization of the source. *20 C.F.R. §§ 404.1527(c), 416.927(c)*; *see generally Gayheart, 710 F.3d at 376*; *Cole, 661 F.3d at 937*. While the ALJ is directed to consider the factors, the ALJ is not required to provide an "exhaustive factor-by-factor analysis" in the decision. *Francis v. Commissioner, No. 09-6263, 2011 WL 915719, at *3 (6th Cir. March 16, 2011)*.

In this case, the the ALJ's decision considered treating psychiatrist Dr. Hill's July 2016 opinion, by first summarizing the contents of the opinion. (R. 8, tr., at 27;

15

*see generally* tr., at 596-599.)  Thereafter, the ALJ reviewed the standards for

evaluating opinions from treating sources and then assessed the opinion as follows:

> While Dr. Hill is a treating source, the undersigned finds that his opinion regarding the diminished levels of work functioning is not entirely supported by the objective evidence.  For example, although the record included findings for depressed mood, panic attacks, and insomnia, the claimant presented as pleasant and cooperative and engaged in activities, such as maintaining his appointments, paying bills, driving, shopping, interacting with family members, and taking care of his elderly mother.  The undersigned finds that Dr. Hill's opinion is not entirely consistent with treatment notes that showed the claimant's behavior, mood, affect, orientation, judgment, insight, memory, attention, concentration, and thought content were within normal limits.  In addition, the undersigned finds that Dr. Hill's opinion is inconsistent with treatment notes that indicated improvement in mood symptoms with treatment.  Further, the undersigned finds that Dr. Hill did not provide sufficient explanation of his opinions nor how he arrived at the mathematical percentages he assigned.  Accordingly, the undersigned give[s] partial rather than controlling weight to Dr. Hill's opinion.

(R. 8, tr., at 27-28, internal citations omitted.)

The ALJ here provided sufficient reasons for discounting the doctor's opinion

that were supported by specific citations to evidence in the case record.  (R. 8, tr., at

27-28.)  Courts have found that even a "brief" statement identifying the relevant

factors has been found adequate to articulate "good reasons" to discount a treating

physician's opinion, if the analysis touches on the required factors, *Allen v.

Commissioner*, 561 F.3d 646, 651 (6th Cir. 2009), *Quinlavin v. Commissioner*, No.

15CV731, 2017 WL 583722, at *2 (N.D. Ohio Feb. 14, 2017), and the ALJ here has

gone beyond that.

16

Holcomb, however, argues that the ALJ's basis for rejecting Dr. Hill's opinion[4] did not amount to substantial evidence.  *Id.* at 666.  For example, Holcomb contends that the ALJ relied upon the portions of the records to conclude that Holcomb exhibited normal orientation, judgment, and insight while overlooking evidence in the same records pertaining to depression and anxiety.  (R. 10, PageID #: 666, citing tr., at 470-471.)

It is well settled that an ALJ is not required to discuss every piece of evidence in the record to support her decision.  *Moscorelli v. Colvin*, No. 1:15CV1509, 2016 WL 4486851, at *3 (N.D. Ohio Aug. 26, 2016) (citing *Thacker v. Commissioner*, 99 Fed. Appx. 661, 665 (6th Cir. 2004).)  In one cited instance, for example, Holcomb points to subjective symptoms which were self-reported to the provider.  (R. 10, PageID #: 666, citing R. 8, tr., at 470 ("Subjective").)  The ALJ, on the other hand, cited to symptoms that the provider characterized as "Objective" findings:

> General:  cooperative and mild distress
> Mental status Assessment:  Posture, behavior, mood and affect all within normal limits.  Orientation, judgement, insight, and memory all within normal limit.  Attention, concentration, and thought content all within normal limits.

(R. 8, tr., at 471, cited by tr., at 28, as "B7F/7-8".)  Although Holcomb characterizes the ALJ's decision as cherry-picking from the evidence, the court finds it reasonably

---

[4] The court notes that the ALJ did not "reject" Dr. Hill's opinion, but gave his opinion partial weight rather than controlling weight.  (R. 8, tr., at 28.)

"can be described more neutrally as weighing the evidence." *See, e.g.*, *White v. Commissioner*, 572 F.3d 272, 284 (6th Cir. 2009).

Holcomb also challenges the ALJ's assertion that "treatment notes indicated improvement in mood symptoms with treatment." (R. 10, PageID #: 667; R. 8, tr., at 28.) The ALJ cited, in support, treatment notes from a March 3, 2015 visit to Dr. Kauffman that stated "Some improvement in mood," and from a February 18, 2015, visit to Dr. Hill, where the patient stated, "I am doing a bit better." (R. 8, tr., at 584, 588.) At that same visit, Dr. Hill commented that claimant "appears much more stable– more gregarious, offered more spont[aneous] speech, grooming better – mood appears better." *Id.* at 588. Summarizing the mental status exam, Dr. Hill indicated Holcomb's attention span and concentration was good, his thought process was logical and goal oriented, and mood and affect was "less depressed brighter affect." *Id.* Dr. Hill's treatment plan for claimant's major depressive disorder was to continue Cymbalta. *Id.* The court cannot find that the ALJ mischaracterized the evidence. As noted above, the court may not try the case *de novo*, resolve conflicts in the evidence, or decide questions of credibility. *Wright*, 321 F.3d at 614; *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984).

The Commissioner's determination must stand if supported by substantial evidence, regardless of whether this court would resolve the issues of fact in dispute differently, or substantial evidence also supports the opposite conclusion. *Bass*, 499 F.3d at 509; *Mullen*, 800 F.2d at 545. Although Holcomb references evidence which he claims supports a different conclusion than that reached by the ALJ (R. 10,

18

PageID #: 665-668), the ALJ's assessment of Dr. Hill's opinion is also supported by an earlier discussion of the medical evidence of record (R. 8, tr., at 24-26).  The ALJ supplied good reasons, supported by evidence in the case record, which are sufficiently specific to make clear the basis for the weight she assigned to the treating psychiatrist's opinion.  *Gayheart*, 710 F.3d at 376; *Blakley*, 581 F.3d at 406-407.

Even when a treating source's opinion is not entitled to controlling weight, an ALJ must still determine how much weight to assign to the opinion.  *Gayheart*, 710 F.3d at 376; *Cole*, 661 F.3d at 937; 20 C.F.R. §§ 404.1527(c), 416.927(c).  The court finds that the ALJ adequately addressed the Section 404.1527(c) and 416.927(c) factors.  The ALJ recognized Dr. Hill as a psychiatric specialist (R. 8, tr., at 24.)  Moreover, the decision considered the length of Holcomb's treatment relationship with Dr. Hill, and the nature and extent of the treatment relationship.  (*Id.* at 24-25 (citing treatment notes from 2014, 2015, 2016).)  The ALJ also addressed the supportability of Dr. Hill's opinion, and the consistency of the opinion with the record as a whole.  *Id.* at 27-28.

The ALJ's decision concerning Dr. Hill's opinion was well-supported by a thorough consideration of the medical evidence in the record.  *See generally* R. 8, PageID #: 24-26, 27-28.  Reviewing the parties' arguments and the evidence of record, the court finds the ALJ's decision is supported by substantial evidence, regardless of whether this court would resolve issues of fact in dispute differently,

19

or substantial evidence could support an opposite conclusion.  *Bass*, 499 F.3d at 509; *Mullen*, 800 F.2d at 545.

B.  VE testimony and Hypothetical Questioning

Holcomb next alleges the ALJ's finding that he can perform jobs without accommodations was not supported by the evidence and is contrary to law. (R. 10, PageID #: 653, 670-674.)  He contends that the ALJ's RFC, and the hypothetical questioning to the VE, were flawed "because [the ALJ] said Mr. Holcomb could only stand for 4 out of 8 hours a day, but the ALJ did not explain what Mr. Holcomb was to do the other 4 hours."  *Id.* at 671.  Moreover, Holcomb indicates that he is morbidly obese, weighing between 350 and 400 pounds, and cannot sit in a standard workplace chair or stool, which he contends without authority supports a finding of disabled.  *Id.* at 670.  The claimant also argues that the resulting RFC is flawed because the ALJ did not include the type of chair in the hypothetical questioning to the VE.  *Id.* at 671-672.

"In order for a vocational expert's testimony in response to a hypothetical question to serve as substantial evidence in support of the conclusion that a claimant can perform other work, the question must accurately portray a claimant's physical and mental impairments."  *Ealy v. Commissioner*, 594 F.3d 504, 516 (6th Cir. 2010); *see also Pasco v. Commissioner of Social Sec.*, No. 03-4358, 2005 WL 1506343, at *14 (6th Cir. June 23, 2005); *Varley v. Secretary of HHS*, 820 F.2d 777, 779 (6th Cir. 1987) (citing cases).  Hypothetical questions need only incorporate those limitations which the ALJ has accepted as credible.  *Parks v. Social Sec.*

20

*Admin.*, No. 09-6437, 2011 WL 867214, at *9 (6th Cir. March 15, 2011); *Casey v. Secretary, HHS*, 987 F.2d 1230, 1235 (6th Cir. 1993).

During the underlying hearing, the VE testified concerning "what Mr. Holcomb was to do the other 4 hours" that he was not standing/walking (R. 10, PageID #: 671).  In response to claimant's counsel's question, "when the Judge gave you the limitation of standing, walking only four out of eight hours a day, what did you assume the person was doing the other four?" VE: "Sitting."  (R. 8, tr., at 74; *see also id.*, at 71.)  In addition, the record contains opinion evidence that Holcomb has the ability to stand or walk about four hours, and the ability to sit for six hours, of an eight-hour workday.  (R. 8, tr., at 114, 155.)

Counsel for Holcomb then asked the VE:

Q.  . . . This person requires a seating – a chair or other seating accommodation that can tolerate weight above 350 pounds.  Can that be expected in the jobs that you identified?

A.  Well, no, I think – that there are stools there and the person is at a bench.  I'm not prepared to tell you how much the stool would tolerate in terms of weight.

(R. 8, tr., at 74-75.)  Counsel informed the VE that his belief is that the industry standard was about 275 pounds, which the VE did not contest.  *Id.* at 75.  The questioning continued:

Q. . . . well, let me ask you this.  Have you placed people who weigh 350 pounds or more in jobs that required significant amounts of sitting?

A.  Yes, in fact the jobs I identified.  That's why I did those jobs.  And those jobs the person can sit or stand and still perform the job duties.

21

Q.  Well, are they given accommodations for the weight that they carry
when they're sitting?

A.  They may depending on the employer and the environment and all
the things that go along with it.  One of the things that employers do is
accommodate because of ADA.  As long as they can still perform the job
duties so —

Q.  Well, if the – I'm sorry.  If the person—

A.  – all I'm saying is that there are employers out there that will
accommodate that as long as the person is able to perform the
essential functions of the job.

(R. 8, tr., at 75.)  Counsel then inquired as to an accommodation under the

Americans with Disabilities Act ("ADA") and the VE replied that his understanding

was "the ADA is concerned [with] the person's ability to perform the essential

functions of the job."  *Id.* at 76.  In other words, the VE's focus was on the vocational

aspect.

The ALJ found that the VE's testimony was that he had placed morbidly

obese individuals in the specified jobs, and the VE did not testify that a chair would

be an accommodation.  (R. 8, tr., at 30.)  The VE's testimony that employers "may"

provide a special chair as an accommodation is not the same thing as saying the

employer must or will provide such a chair.  *Id.* at 75.  The ALJ did not incorporate

any related limitations into the RFC.  *See id.*, at 20.

The Commissioner cites an Eighth Circuit case which has some relevance:

[The cases discussed] merely demonstrate that ALJs may properly rely
on VE testimony that a certain needed modification is part of the
functional workplace.  It makes no difference that a particular
workplace modification, such as a bariatric chair, might be called an
"accommodation" or even a "reasonable accommodation."  *See* 42 U.S.C.

22

§ 12111(9) (defining "reasonable accommodation" for ADA purposes). The use of the phrase is immaterial. It also makes no difference that a particular modification or accommodation is offered because the ADA requires employers to do so.  What matters is the functional workplace as it actually exists. If a particular modification or "accommodation" has become prevalent and is commonly offered — whether considered required by the ADA or not — an ALJ may, of course, consider this evidence in making its determination.

Here, the VE testified based on her expertise that bariatric chairs are, in fact, commonly provided to individuals in the workplace.  In other words, the VE provided evidence that offering this particular accommodation is prevalent.  As always, an ALJ may rely on VE testimony about common workplace practices based upon the expert's knowledge and experience.  *See Welsh v. Colvin*, 765 F.3d 926, 930 (8th Cir. 2014) (citation omitted). Thus an ALJ may properly rely on expert testimony about modifications that exist, or are commonly provided, in the workplace.  *See id.; see also Whitehurse [v. Apfel]*, 158 F.3d [987,] 988 [(8th Cir. 1998)] (remanding to develop testimony as to whether "sedentary work is available that would provide [the claimant] with work breaks").

*Higgins v. Commissioner*, 898 F.3d 793, 796 (8th Cir. 2018) (citation to administrative record omitted).

The court does not find merit in the claimant's argument here.  The RFC is the most an individual can still do despite his limitations.  20 C.F.R. §§ 404.1545(a), 416.945(a).  Holcomb does not point to any opinion evidence that he has limitations which would require a special chair.  The VE's testimony was that Holcomb, given the ALJ's hypothetical limitations, was able to perform the specified work.  (R. 8, tr., at 71-72.)  The ALJ's hypothetical question incorporated those limitations that the ALJ accepted as credible, and thus there is no error here.  *See generally Parks*, 2011 WL 867214, at *9; *Casey*, 987 F.2d at 1235.

23

## VII. CONCLUSION

For the foregoing reasons, the court finds that the ALJ's decision is based on substantial evidence in the record, as outlined in the findings and supported by medical evidence.  Accordingly, it is recommended that the decision be affirmed.


<u>s/ David A. Ruiz</u>
David A. Ruiz
United States Magistrate Judge


Date:  <u>January 14, 2019</u>

## OBJECTIONS

Any objections to this Report and Recommendation must be filed with the Clerk of Courts within fourteen (14) days of mailing of this notice.  Failure to file objections within the specified time may waive the right to appeal the Magistrate Judge's recommendation.  *See Thomas v. Arn, 474 U.S. 140 (1985); see also United States v. Walters, 638 F.2d 947 (6th Cir. 1981).*